recall that we have a light system. When the yellow light is on, you have two minutes left. When the red light is on, you stop. Unless we're questioning you, that isn't a way to run away from our questions. But if you're if you're talking, it's time to cut off. Please recall that rebuttal is for rebuttal only. And when you're citing to the record, we always appreciates actual citations and not just somewhere in the record. This exists. So with that, we'll call our first case, 18-10535, United States v. Gallegos. May it please the court. Good morning. My name is Randall Nunn. I'm counsel for the appellate in this case, Alexander Gallegos. I will this morning focus on the first issue in my appeal and I'll rest on the brief for the second issue dealing with due process. This case involves the appeal by Mr. Gallegos of a 200-month sentence for conspiracy to possess with intent to distribute a level of 34. He was enhanced two levels for possession of a weapon in connection with the offense. He got three levels downward for acceptance responsibility, giving him a 33 total offense level. The issue in this case that we have that we appeal has to do with his criminal history. He was given a total of 14 criminal history points. We contend that 11 of those criminal history points were in error and should not have been assessed. The issue has to do with relevant conduct. We contend that those three offenses involved, each of the three offenses got three criminal history points for a total of nine. There was also two points that were assessed because the pre-sentence report said that the defendant was under a criminal justice sentence of parole at the time and that because of that he got two more points. And so we contend that because the two offenses that were tied to that criminal justice sentence were two that we contend were relevant conduct, that those two should not have been assessed either. The relevant conduct rule in the sentence that you think is applicable versus the one the judge actually used, because it's always sometimes hard to discern. It's a bit of a moving target in these briefs. So if you could set that out for me, I'll put it in my notes. I think the criminal history range that we think should be the proper range is 151 to 188 months. The range that he set in the PSR in which the district judge dealt with was 235 to 293. So it's quite a difference in those two ranges. And that was really almost entirely the difference that we're arguing for due to the criminal history points. So it had quite an effect. The convictions that were involved, there were three Texas convictions. All of them were methamphetamine drug offenses. One was delivery of a drug and the other two I think were possession charges. They happened in 2013 and 2014, I think the arrest for those offenses. So if an offense is a crime of conduct, then it should not have been given criminal history points, is what we're saying. All three of these were given criminal history points. For A1.2, if something, a sentence is imposed for drug and conduct. What about the fact that the judge said it would otherwise impose this sentence even assuming all your arguments? I'm sorry? The judge said that this is a sentence that would otherwise be imposed even if your arguments are correct. So why doesn't that make it harmless error? Well, I think the error was significant. The difference was significant. He had said in his statement of reasons, well, let me say this. In his statement of reasons, he said nothing about that. He didn't say this is the same sentence that I would give regardless. Most of the cases I've had where a judge does that, he also includes that in the final paragraph of the statement of reasons. It wasn't in there. There was also his statement at sentencing was a very brief, this is the same sentence I would give. And that was essentially all he said. He didn't go into detail for why. The other thing, the statement of reasons said that the sentence he gave was a below guideline sentence. If the sentence was in an error and we had raised these issues in objections to PSR, we said this is relevant conduct. He should not have been assessed criminal history points. He didn't really go into that at all when he talked about the same sentence. He just said this is the same sentence I would give. So it's very difficult to tell from that what was his reasoning for that other than it has an effect obviously on an appeal and harmless error and that kind of an issue. But I think in this case, if you look at the case from the Supreme Court, Molina case, it says that if the district judge had a reasonable probability that he would have changed that sentence, and had he known of the magnitude, we should give him that chance. I think that's what... But he did know the magnitude. I mean, Molina Martinez, while it's obviously a Supreme Court opinion, we look to it for guidance in all cases, was dealing with plain error where the judge would not have known, hey, I'm making an error. That's the whole idea in plain error is that nobody brought it up. Whereas here they did, and the judge did know and did say, for better or for worse, would do the same thing. So it isn't like, well, we need to give the judge another chance because he didn't really realize what was going on. He did realize what was going on. Well, I think the case is a little confused on this whole issue for this reason. The judge adopted in his sentencing the facts stated in the pre-sentence report from the probation officer as his facts. He adopted the conclusions set out in the pre-sentence report. When you look at the pre-sentence reports, the probation officer concluded that certain offenses that took place in 2013 and 2014 were relevant conduct. Okay? So when the judge adopted those conclusions, I think he adopted those same conclusions about relevant conduct, if there were facts, but the conclusions. So he adopted both of those. So here you have the judge adopting something that's really contrary, I think, to what some of the argument is as to whether it's relevant conduct. So it's a bit confusing, I think, as to if he meant that he adopted the facts and the conclusions, then he adopted the fact that the probation officer said this is relevant conduct for the offenses discussed in paragraph 42 and 43 of the pre-sentence report, which had to do with some offenses in 2013 and 2014 that were related by a confidential source in the pre-sentence report under the heading of Gallegos, under the heading of current conspiracy, and under the heading of offense conduct. It was right there. And it said that this confidential source said that he engaged in a number of transactions in these years, I forget what it was, 25 years. But isn't it possible that for a long time he was involved in a conspiracy that finally comes to the fore in the case at Barr, and then also, in the meantime, he's also doing stuff just personally that gets him convicted in 2014? In other words, can you work for two employers, or can you be self-employed and also working for an other conspiracy, whereas a 2014 could be sort of the self-employed, self-medicating, if you will, piece? Well, I think it's possible, certainly, that he could have been doing some personal things in those same years. But I think that that's really not the issue here, because if you look at — Well, isn't it the issue? Because if the judge's conclusion is plausible, we've got to go with it. We don't get to say, well, I wouldn't have found that, and whatever, because we're just the appellate judges. So if it was, you know, sort of by physics not possible or wholly implausible, then we have to set it aside. But if it is plausible that the 2013 behavior could be connected to the 2016 behavior, whereas the 2014 could be separate, if that's plausible, don't we have to go with that? Well, I think, Your Honor, it could be plausible, except for the fact that I think, you know, the probation officer, when the probation officer filed the addendum to the pre-sentence report responding to our objections on this relevant conduct criminal history issue, she was quite clear in saying that the acts described in paragraph 42 — this was one in 2000, I think, and 13, a series of acts — the acts described in paragraph 42 were committed by the defendant and occurred during the commission of the offense and include the defendant's sale of methamphetamine, therefore pursuant to 1B.3, as relevant conduct. That's her response back to us when we objected to this. Same thing in paragraph 43. She also did a response back to our objection, and this was a series of events in — listed in paragraph 43 in the pre-sentence report. But they're not the convicted offense. I'm sorry? They're not the events for which he received the conviction. No, but I think that they showed that at that time, when the government says, well, he wasn't really involved in this kind of activity because he really got into this conspiracy when he got out of prison. That's not true. Both of these things show, 2013, 2014, some of the same co-defendants — in fact, I think all of the same co-defendants — and the probation officer is saying, this summarizes his activities over eight months and at least 24 transactions, 1,162 grams of methamphetamine. And that was counted against him. There's a chart, paragraph 61. I'm trying to make sure I understand. Are you contending that the district court adopted the PSR and adopted that part of the PSR which found certain offenses to be relevant conduct, but that despite adopting the PSR, the district court then turned around and found them to be prior convictions? Is that what you're saying? The same offenses? Yes, sir. In a sense, that is what I'm saying, that he did adopt it, but I don't know that the court really focused — the sentencing hearing was rather short. I don't know that he really focused on what had been said in the addendum as far as responding and saying that Gallegos was involved in this offense and in this conspiracy. But the addendum does not say that the 2014 convictions were relevant conduct. I think the — Or tell me where I've got the record. There was a 2014 conviction. I think it was, in our view, relevant conduct. Tell me where the PSR says that. The response to us in paragraph 42 and 43 of the addendum, that's ROA 155 and 156, the response in both of those says that. It says these are relevant conduct, but the reason that she says that it's not an issue here is that these were user amounts, the drugs involved. And so, therefore, it's not part of the conspiracy because this was a distribution conspiracy. Well, I see nowhere where user amounts have been defined, any basis, any cases, any citations. What is a user amount? I think somebody just came up with a bald conclusory statement here and said, these are user amounts. Based on what? The chart that lists the drug quantities Gallegos was charged with, the first two items in that chart, they involve small amounts. One of them, in fact, I think is 3.54, maybe it's 8.5. I think there was five one-gram transactions and one 3.54 transaction for eight-something grams. That's one of the things he was charged with. It started out with that on the chart. And the other one was the top two were the same way. So you can't have it both ways. You can't say, well, any small user amount doesn't count because this is a distribution so this is not it. Well, that's just a conclusion. The 11 points that I'm sorry, what case says that? Says what? What you just said. You just said you can't do this. I'm saying what case says that? Well, I don't think there are any cases that say what a user quantity is. That's what we're saying. Something that doesn't exist, I don't know how we can But the discussion in 42 and 43 that is then being discussed in the addendum on page 155 is about the amounts that were used as relevant conduct. It is not about the convictions. Right. I realize all of this has a timing element to it. I'm not disputing that. But your answer to Judge Graves, I think, is a bit off because it suggests that the PSR directly linked the convicted offenses with relevant conduct and that's not what is happening here in this 42 and 43 that is then part of the addendum. It is pre the convicted offenses. Now, I understand what you're saying. This all seems to be the same because it's in the same time zone. I get that. But the probation officer didn't say that. There's not a direct conflict in the facts here. Or maybe you need to point me to something else because what I'm looking at doesn't show me that. So if I'm missing something, tell me what it is. Well, I think the probation officer does say initially that these are relevant conduct that he was engaged in. And I think that the problem with that is that the only reason that the probation officer comes back on some of the latter things and she says, well, it would be relevant conduct, but these are user amounts and user amounts can't be used to establish relevant conduct. I'm saying where do you get that? There is no basis for that. I mean, these offenses involved in one case a co-defendant, in two cases. I'm not being, I'm not, you're not understanding what I'm saying. Okay. On day one, Mr. X possesses 100 grams of meth. On day two, he possesses 300 grams of meth and is convicted of that. Those are not the same event. They're connected in by timing, but they're not the same event. And what I'm saying is she is dealing with a day one on relevant conduct or he or she, I don't remember who, which probation officer was. The probation officer is dealing with day one as relevant conduct. Day two is the convicted offense. You can dispute that, but that's not the same thing as treating day two as relevant conduct in some places and as a convicted offense in other places or as a prior conviction in other places. See what I'm saying? I think, I think I do, Your Honor, but I think the, the issue here is this is a conspiracy that took place. The indictment says beginning on or before 2014, before it could go way back, but let's say 2013, 14. And the argument has, has been made in the government's brief that, well, he didn't come into the conspiracy until he got out of prison in 2016. And we're saying that's ridiculous because when you look at the pre-sentence report, here it is in two, in two different paragraphs saying he's responsible for over a thousand grams in one and an 8.54 grams in another. He was involved in that and went to prison. That wasn't a voluntary action. He involuntarily was incarcerated. He comes, he gets out and what happens? He's back in it again. So we're saying this conspiracy, he was involved in it at least from 2013 onwards. So then you have to look at was he charged for quantities in this chart? The answer is yes. The quantities in paragraph 42 and 43 were not large quantities, but it didn't matter. He was charged with them. So when you charge him with those. He's charged in the conviction, the cases? No, he's charged with accountability for the drug quantity and setting what his level is. But the convictions from 2014, did they cover those same, those same events as 42 and 45? I think one of them did. There was two I think in 2013, one in 2014. The reason I say that, paragraph 42 or 43, one of the two says, the confidential source says he was involved, he was involved for this whole period of time. Okay, but how do I know that this confidential source in paragraph 42 and 43 is also the events that that confidential source is reporting are subsumed in the prior convictions that we've been discussing, that he got the 11 points for? Well, I don't know that it is absolutely shown, but the time period is the same. From February to I think December of 2013, that's the same time period that offense is involved. The offenses involve methamphetamine, the same place, Wichita Falls, two of them in a hotel room. One of them a co-defendant in the same conspiracy case. Okay. All right. Thank you. You've reserved a little bit of time for rebuttal, not a lot. Okay. Ms. Hayworth. May it please the Court, Gail Hayworth on behalf of the United States. Now, the district court's relevant conduct finding in this case can, this Court can easily affirm based on the deference that this Court gives to a district court's factual findings. And the easiest path to affirmance here is the intervening sentences as well as Note 5C to Guideline 1B1.3, which provides that offense conduct associated with a sentence imposed prior to the acts constituting the instant offense is not considered part of the same course of conduct as the offense of conviction. And here, Gallego's paragraph 42 and 43 be counted as relevant conduct? Well, they weren't, because the government argued that they are not relevant conduct, and the district court adopted the government's argument in rejecting the relevant conduct objection by the district court. Where do we see that? How can you walk me through that? Sure. So in rejecting the defendant's relevant conduct argument, the government or the district court said that it was doing so for the reasons stated in the government's  And it then adopted the PSR. It did adopt the PSR, but because the government's objections didn't change the calculations or the ultimate offense conduct level in the PSR, that the way to harmonize that is that it agreed with the government's argument that those prior amounts were not included in the offense level, but it didn't affect the ultimate outcome. It didn't change the ultimate outcome. The last sentence, so to speak. Right. So your argument is 42 and 43 are irrelevant because the judge didn't count them and they didn't increase the offense level in any way, and therefore we're just dealing with the fact that we have these prior convictions that give the 11 points and we have all this other stuff in 2016, et cetera, and that's it? That's your argument? Right. Okay. And the math would support that? The math will support that. Without those two paragraphs, it's 19,000 as opposed to 21,000 kilograms of marijuana, which is the same offense level. What's the threshold number for that? 10,000 to 30,000. Okay. So we don't have to be very good at math to get there. Right. There's a lot of wiggle room there. So, and here Gallegos cannot show that the district court clearly erred in finding that the sentences for his prior drug offenses were imposed before the acts constituting the instant offense of conviction. And he can't show that it was, in other words, he can't show that it was implausible for the district court to find that the acts constituting the instant offense occurred after August 1, 2014, the date that the sentences were imposed in his prior drug offenses. And he can't show that that was implausible given the factual resume, the undisputed incarceration record, and the acts for which he was ultimately held accountable in this instant offense. In the factual resume, it shows that the defendant committed the acts underlying this instant offense sometime after August 1, 2014, the date that the sentences were imposed for his prior offenses. In it, the defendant stipulated that he committed the underlying acts beginning in or before 2016, and he specifically struck out the prior language saying beginning in or before April 2014, thereby clearly showing that he didn't commit the acts underlying the instant offense at any time in 2014. After all, why strike out the year 2014 if it was correct? The most plausible reading of the factual resume, then, is that the defendant committed the acts underlying the instant offense of conspiracy beginning in or before 2016, but sometime after 2014. And this is especially true considering Gallego's undisputed incarceration record. That record says we're supposed to do what you said at the outset, which is where there seems to be a little bit of a question mark because the judge says, oh, I agree with the government's argument, but then says, oh, but I adopt the PSR, which is somewhat in conflict with the government's argument. What says we're supposed to harmonize that the way you did? I mean, I guess just based on logic, what was before the court, like what you're interpreting what the court was saying based on everything before it, and the most logical inference of what the court was saying is that I'm not including those amounts, and the intervening sentences basically determine this, that that is not relevant conduct under Note 5C. Additionally, so based on the factual resume, the undisputed incarceration record, which shows that Gallego's was incarcerated from February 2000 or in state custody for his prior drug offenses from February 2014 until March 2016, reading the factual resume in light of that undisputed incarceration record, it was more than plausible for the district court to conclude that the defendant committed the acts underlying this instant offense sometime after 2014, or after his release from state custody in March 2016. So, therefore, Note 5C comes in, and the district court properly treated those prior offenses as criminal history and not relevant conduct. Additionally, although Note 5C and the intervening sentences provide the easiest path to affirmance, you can also affirm based on the lack of temporal proximity, similarity, and regularity in the record. Regarding the lack of temporal proximity, a year is generally a benchmark for that. There's two years separating the prior offenses from the acts constituting the instant offense. Regarding lack of similarity, there is no evidence of a common source, supplier, accomplices, or modus operandi similar to the prior offenses in the instant offense. And regarding regularity, there was no intervening criminal activity to connect the prior offenses to the instant offense. And if the Court has no further questions. Thank you. Last year's argument. Your Honor, just one brief point I would like to make in the short time. I think the acts that were charged in the three Texas offenses, the question is, are they relevant conduct or are they not relevant conduct? We raised that objection. The government provided no basis for these three not being relevant conduct except for one statement. And the same identical statement was included in all three responses to those three particular paragraphs dealing with the three offenses. This is considered a user amount, not a distribution amount, and therefore not relevant conduct. And what we're saying, quite simply, I think, is this. There is no basis that I know of in any cases that say what a user amount is or what a user amount isn't as far as quantity. Well, what about his admission that the conspiracy starts in 2016? Mr. Gallegos's admission. Well, he was obviously involved in 2013 and 2014 from what this confidential source is saying. And the confidential source. Well, we're talking about it. I mean, it's, you know, I was a lawyer at two different firms, so I was practicing law, but not at it, not the same it. It was two different successive, not in the same time, two different firms. So, in other words, you can have this conspiracy number one, then you go to prison, you get out, and you do conspiracy number two. The fact that you're kind of in the drug business doesn't mean you're in the drug business in the same one, the same firm, so to speak. Yes, I understand that. But in all three of these events, there were other people involved with him. It wasn't just him sitting at home using drugs. In one case, Clark was with him, a co-defendant in a conspiracy case. In another case, he was in a hotel. In two of the cases, there were digital scales present. And right in the PSR, there's some statements saying that everyone knows that digital scales are used to weigh out drugs and transactions. One of the other of the three offenses was in a hotel room, and we attached to our objections to the addendum a statement from one of the officers, a case agent or one of the agents in there, that said that everyone knows, I know from my training and experience, that hotel rooms are used to do drug transactions. Let me ask you this. If he was in a conspiracy to distribute drugs with John Doe in 2014,  gets out in 2016, and meets a whole new set of people, Jane Smith, and starts having a conspiracy with them, would we say that those two, that the first one's relevant conduct to the second, just because they both involve drugs? Not necessarily. You'd have to look, I think, at who the people were. And I think in this case, the people, there was direct overlap in both of those periods of time completely. Thank you. And, Mr. Nunn, I see that you're court-appointed. We appreciate your acceptance of the appointment, and we appreciate both sides' arguments and your cases under submission. All right. We'll let them.